IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

DANA MARCH and COREY MARCH,

                              Plaintiffs,

v.                                          Civil Action No. 3:07–CV–508

TYSINGER MOTOR CO., INC.,

                              Defendant.

## MEMORANDUM OPINION

THIS MATTER is before the Court on a Motion to Compel Arbitration by Tysinger Motor Company, Inc., pursuant to Federal Rule of Civil Procedure 12(b)(1). For the reasons stated below, this Motion shall be GRANTED.

1.[1]

On September 23, 2006, Tysinger agreed to sell a 2007 Hyundai Sonata to Dana and Corey March. The Marches gave Tysinger a check for $1,000 and applied for a loan for the rest of the car's price. Tysinger told the Marches that their application was approved, registered the Sonata with the Virginia Department of Motor Vehicles in the Marches' names, and transferred the license plates from their old car, which Tysinger accepted as a trade-in. Several days after the Marches left Tysinger's lot in the Sonata,

---

[1] For the purpose of ruling on Tysinger's Motion to Compel Arbitration, the Court accepts as true all of the factual allegations in the Marches' complaint and views them in the light most favorable to the Marches. See Erickson v. Pardus, 127 S.Ct. 2197, 2200 (June 4, 2007); Christopher v. Harbury, 536 U.S. 403, 406 (2002).

1

however, Tysinger informed the Marches that their application for financing had been rejected, demanded that they return the Sonata, and subsequently re-possessed the car, without returning personal property of the Marches that was in the car.

The Marches filed suit in this Court, alleging that Tysinger's conduct violated the Equal Credit Opportunity Act, the Fair Credit Reporting Act, and the Virginia Consumer Protection Act. The Marches also allege that Tysinger fraudulently induced them to purchase the Sonata. Finally, the Marches allege, on behalf of people who purchased a car from Tysinger that was subsequently re-possessed, that Tysinger violated Article 9 of the Uniform Commercial Code.

In response, Tysinger points out that the Buyer's Order signed by the Marches provides that any dispute arising from the sale of the Sonata shall be resolved by binding arbitration conducted according to the rules of the National Arbitration Forum (NAF) and governed by Virginia law. See Pl.'s Compl. Ex. A. The Buyer's Order defines a "dispute" as any arbitrable allegation of a violation of federal or state statute, any claim for damages of greater than $1,000, or any claim that a disagreement must be arbitrated, with several exceptions (e.g., Tysinger's right to re-possess the car pursuant to the terms of the Buyer's Order[2]). The Buyer's Order also states that the arbitrator shall decide how to allocate the costs of arbitration, and that the arbitration agreement will survive any performance or cancellation of the Marches' agreement to purchase the Sonata. Thus, Tysinger asks the

---

[2] The Buyer's Order provides that the sale of the Sonata "is conditioned upon approval of [the Marches'] retail installment sales contract ... by a financial source on terms acceptable to [Tysinger]," and that "[i]f the retail installment sales contract ... is not approved, [the Marches or Tysinger] may cancel th[e] sale...." Pl.'s Compl. Ex. A.

Court to compel the Marches to arbitrate their complaint in accordance with the terms of the Buyer's Order.[3]

Recognizing that their agreement with Tysinger is governed by the arbitration agreement, the Marches state that they are willing to arbitrate their claims, see Pl.'s Mem. Resp. Def.'s Mot. to Dismiss at 1, but they argue that requiring them to proceed before the NAF is unconscionable because it is prohibitively expensive and does not permit class arbitration.

2.

The Federal Arbitration Act, 9 U.S.C. §§ 1–16, embodies a "national policy" favoring the enforcement of arbitration agreements. Buckeye Check Cashing, Inc. v. Cardegna, 546 U.S. 440, 443 (2006). Section 2 of the Act establishes that an arbitration agreement must be treated like any other contract, providing that a written arbitration agreement "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2; see Buckeye Check Cashing, 546 U.S. at 443. Since arbitration agreements are treated like other contracts, they are also governed by state law, provided that the state law applies to contracts generally, not only to arbitration agreements. Doctor's Assocs., Inc. v. Casarotto, 517 U.S. 681, 687–88 (1996); see Hill v. PeopleSoft USA, Inc., 412 F.2d 540, 543 (4th Cir. 2005) (ruling that state law governs whether an arbitration agreement may be revoked).

---

[3] Tysinger also asks the Court, if it denies Tysinger's Motion to Compel Arbitration, to transfer the Marches' suit to the Newport News Division of the Eastern District of Virginia. In light of this Opinion, however, that Motion shall be dismissed as moot.

Like the United States, Virginia favors enforcing arbitration clauses.  Va. Code § 8.01–581.01; TM Delmarva Power, LLC v. NCP of Va., LLC, 557 S.E.2d 199, 202 (Va. 2002).  And, like the Federal Arbitration Act, Virginia law provides that a written arbitration agreement "is valid, enforceable and irrevocable, except upon such grounds as exist at law or in equity for the revocation of any contract."  Va. Code § 8.01–581.01 (2007).

Thus, under federal and Virginia law, while a court may decide whether an arbitration agreement was formed and determine its scope, the court may not resolve any dispute that is covered by an enforceable arbitration agreement.  See 9 U.S.C. §§ 3, 4; Howsam v. Dean Witter Reynolds, Inc., 537 U.S. 79, 83 (2002); Am. Gen. Life & Acc. Ins. Co. v. Wood, 429 F.3d 83, 87 (4th Cir. 2005); Va. Code § 8.01–582.02(A); Piland Corp. v. League Constr., 380 S.E.2d 652, 653 (Va. 1989).  That principle "leaves no place for the exercise of discretion by a district court."  Byrd, 470 U.S. at 218.

The Marches acknowledge that they entered an arbitration agreement with Tysinger, and they agree that it covers the dispute before the Court.  Thus, the only question that the Court may consider is whether the arbitration agreement is unenforceable because it requires the Marches to proceed before the NAF.

A.

Before doing so, the Court must evaluate the significance of a ruling several months ago by the Fourth Circuit that an arbitrator, not a court, must decide whether a "collection action waiver" in an arbitration agreement – one that the parties acknowledged was generally valid – was unconscionable.  Davis v. ECPI Coll. of Tech., L.C., 227 Fed. App'x

4

250, 253–54 (Mar. 20, 2007) (per curiam). The Fourth Circuit stated that a court may decide only whether parties agreed to arbitrate a dispute, not "what kind of arbitration proceedings" they envisioned or "how [the dispute] should be arbitrated." Id. at 253 (citing Green Tree Fin. Corp. v. Bazzle, 539 U.S. 444, 452 (2003); Howsam v. Dean Witter Reynolds, Inc., 537 U.S. 79, 84 (2002)). Stated differently, the Fourth Circuit ruled that, with the exception of "gateway matters" – questions that the parties may not have agreed to arbitrate – a court may not resolve a dispute that is governed by a valid arbitration agreement. Davis, 227 Fed. App'x at 253.

That principle arguably should not apply to a challenge to the impartiality of the forum specified in an arbitration agreement. Whereas the parties in Davis disputed the validity of a provision of their agreement – a disagreement that did not implicate the neutrality of their chosen forum – a party who alleges that an arbitral forum is biased is, in effect, claiming that the forum may not be able to resolve any aspect of the dispute fairly. If bias exists, it may affect the resolution of a preliminary question, just as it may emerge in the arbitration of the parties' primary dispute. Thus, forcing a party to submit an allegation of bias to the very decision-maker whose ability or willingness to resolve disputes fairly is in question deprives the challenger of a meaningful opportunity for relief.

But, the Davis court cited with approval a ruling by the Southern District of New York prohibiting a court from resolving a claim that the forum specified in an arbitration agreement was unconscionable. 227 Fed. App'x at 254 (citing Ciago v. Ameriquest Mortgage Co., 295 F. Supp. 2d 324, 330 (S.D.N.Y. 2003)). According to the Fourth

Circuit, Ciago held that an "unconscionability challenge to [a] forum selection provision within [an] arbitration clause was not a gateway issue." 227 Fed. App'x at 254. Although the Ciago court commented on the merits of that challenge,[4] its comment was apparently dictum, since the court subsequently stated that an arbitrator must decide the validity of the challenge. Regardless of the Ciago court's intent, however, the Fourth Circuit apparently cited that opinion to support its view that an arbitrator, not a court, should resolve a question about the unconscionability of a provision of a generally-valid arbitration agreement. Since the Marches, like the plaintiff in Davis, do not contend that their agreement is unconscionable as a whole, Davis suggests that this Court may not address the Marches' argument.

    Davis, however, appears to be an anomaly. The Supreme Court has declared that the Federal Arbitration Act gives a court jurisdiction over a challenge to the "making" of an arbitration agreement. See Prima Paint Corp. v. Flood & Conklin Mfg. Co., 388 U.S. 395, 403–04 (1967) (ruling that a court may decide whether an arbitration agreement was fraudulently induced). Since a contract may be unconscionable by virtue of the way it was made, as discussed below, Prima Paint suggests that the Court may hear the Marches' claim.

---

[4] The Southern District of New York stated that the arbitration agreement was not unconscionable because "the procedural and notice rules apply to both parties equally [and] [t]he arbitrator is selected from a list prepared by the Arbitration Association of America ("AAA") and each party may strike from the list any of the arbitrators it deems unacceptable." Ciago, 295 F. Supp. at 330.

Moreover, several other courts in the Fourth Circuit have evaluated claims that an arbitration agreement was unconscionable. See Sydnor v. Conseco Fin. Servicing Corp., 252 F.3d 302, 305–06 (4th Cir. 2001) (reversing an unpublished decision by this Court that an arbitration agreement was unconscionable); Adkins v. Labor Ready, Inc., 185 F. Supp. 2d 628, 636–38 (S.D. W.Va. 2001), aff'd, 303 F.3d 496 (2002); Hooters of Am. v. Phillips, 39 F. Supp. 2d 582, 613–15 (D.S.C. 1998), aff'd, 173 F.3d 933 (1999). In Sydnor, the Fourth Circuit (echoing the Supreme Court's ruling in Prima Paint, 388 U.S. at 403–04) stated that – even though an arbitrator must evaluate a claim that an agreement containing an arbitration provision is unconscionable as a whole – a court may decide whether an arbitration provision by itself is unconscionable. 252 F.3d at 305. And, in Adkins, the district court granted a motion to compel arbitration in part on the basis of its finding that an arbitration agreement was not unconscionable. 185 F. Supp. 2d at 636–38. The Fourth Circuit affirmed that decision, concluding that the agreement was enforceable even though it required the parties to resolve their dispute in a forum that purportedly was expensive and did not allow class claims. See 303 F. 3d at 501–03.

In light of those precedents and the fact that the Davis court did not criticize earlier opinions evaluating whether arbitration agreements were unconscionable, the Court concludes that it may address the merits of the Marches's claim that their arbitration agreement is unconscionable.

B.

Under Virginia law, a contract may be revoked only if it is clearly illegal or repugnant to public policy. Shuttleworth, Ruloff & Giordano, P.C. v. Nutter, 493 S.E.2d 364, 366 (Va. 1997). As a matter of policy, Virginia refuses to enforce unconscionable contracts. See Smyth Bros.-McCleary-McClellan Co. v. Beresford, 104 S.E. 371, 382 (Va. 1920). A plaintiff alleging that a contract is unconscionable must prove that claim by clear and convincing evidence. Pelfrey v. Pelfrey, 487 S.E.2d 281, 284 (Va. Ct. App. 1997).

A contract is unconscionable if it is "one that no man in his senses and not under a delusion would make, on the one hand, and [that] no fair man would accept, on the other." Mgmt. Enters., Inc. v. Thorncroft Co., 416 S.E.2d 229, 231 (Va. 1992). The contract must be so grossly inequitable that it "shocks the conscience." Sydnor, 252 F.3d at 305 (applying Virginia law). The fact that a party formed a contract unwisely, however, does not make the contract unconscionable. Owens v. Owens, 86 S.E.2d 181, 186 (Va. 1955).

While an egregiously unfair contract is unconscionable, a contract may also be unconscionable by virtue of the way it was formed:[5]

> [U]nconscionability is ... concerned with the intrinsic fairness of the terms of the agreement in relation to all attendant circumstances, including the relationship and duties between the parties. A party may be free of fraud but guilty of overreaching or oppressive conduct in securing an agreement which is so patently unfair that courts of equity may refuse to enforce it.

---

[5] Other courts refer to these aspects of unconscionability as "substantive" and "procedural" unconscionability, respectively, see, e.g., Ciago v. Ameriquest Mortgage Co., 295 F. Supp. 2d 324, 329 (S.D.N.Y. 2003), but Virginia courts have apparently not adopted that distinction. Nor has Virginia adopted the position of some courts that an agreement must be procedurally and substantially flawed to be unconscionable. See, e.g., Troy Mining Corp. v. Itmann Coal Co., 346 S.E.2d 749, 753 (W. Va. 1986).

Derby v. Derby, 378 S.E.2d 74, 78 (Va. Ct. App. 1989). Accordingly, a contract of adhesion may be unconscionable. Philyaw v. Platinum Enters., Inc., 54 Va. Cir. 364, 2001 WL 112107, *3 (Va. Cir. Ct. 2001). In Philyaw, the court ruled that a provision of an agreement governing the sale of a car in Virginia that required the parties to arbitrate any disputes arising from the sale in Los Angeles was unconscionable, since the provision was clearly intended to deprive the car's purchasers of their remedies. 2001 WL 112107 at **2–3. Another Virginia court has concluded, however, that the fact that an arbitration provision was one-sided, requiring one party to submit its claims to arbitration while giving the other party some judicial remedies, did not mean that it was unconscionable. See Bramow v. Toll VA, L.P., 67 Va. Cir. 56, 2005 WL 1444527, **2–4 (Va. Cir. Ct. 2005). But see, e.g., Iberia Credit Bureau, Inc. v. Cingular Wireless, LLC, 379 F.3d 159, 171 (5th Cir. 2004) (ruling that a provision that gave only one party the right to seek arbitration was unconscionable).

## C.

Applying that standard to the Marches' arguments, the Court concludes that the arbitration agreement in the contract they signed with Tysinger is not unconscionable.

First, the Marches contend that the costs of arbitration by the NAF would prevent them from vindicating their rights. The Marches allege that they may seek damages (which they have not yet specified) of more than $500,000. If they do, the NAF will charge a "filing fee" of $1,000, a "commencement fee" of $1,000, and an "administrative fee" of $1,250, as well as fees of $50–$150 for filing motions and objections – in addition to the

9

arbitrator's hourly fee and expenses. But, as shown by an affidavit provided by the Marches, their means are limited and their income exceeds their expenses by only about $100 each month. On the basis of those allegations, the Court finds that the Marches have demonstrated that arbitration before the NAF could be prohibitively expensive. Compare Adkins, 303 F.3d at 502–03 (refusing to invalidate an arbitration agreement in part because the plaintiffs did not provide any evidence of the cost of arbitration or their financial status).

But, the Marches have not shown that, as the Supreme Court requires of a party trying to avoid being forced to arbitrate a claim, proceeding before the NAF is <u>likely</u> to be prohibitively expensive. See Green Tree Fin. Corp.–Ala. v. Randolph, 531 U.S. 79, 92 (2000). NAF Rule 44(G)[6] provides a way for the Marches to proceed before the NAF without bearing all of the costs of doing so:

> A "Consumer Claimant" … who asserts that arbitration fees prevent [him or her] from effectively vindicating [his or her] case in arbitration may … file a Request that another Party or Parties pay all or part of the arbitration fees or that the arbitration provision be declared unenforceable, permitting the Consumer to litigate the case instead of arbitrating the case.

Pl.'s Mem. Resp. to Def.'s Mot. to Dismiss, Ex. 3, at 38. Moreover, the NAF does not charge a fee for such a request. So, Rule 44(G) allows the Marches, who qualify as

---

[6] Tysinger argues that the Marches may also seek a fee waiver pursuant to NAF Rule 45. That rule provides that an indigent consumer may request a "waiver of Common Claim filing fees, Request Fees, Hearing Fees, or security for any arbitration." Pl.'s Mem. Resp. to Def.'s Mot. to Dismiss, Ex. 3, at 38. But, if the Marches ask for more than $75,000 – which seems likely – the NAF would classify their claim as a "Large Claim," not a "Common Claim." See id. at 2–3. Thus, Rule 45, which applies only to "Common Claim filing fees," would not provide a basis for a fee waiver.

"Consumer Claimants,"[7] to ask Tysinger to pay the costs of arbitration. If Tysinger refused to do so, Rule 44(G) provides that the dispute would be settled by an NAF arbitrator, applying federal and/or Virginia law – a procedure consistent with the terms of the Buyer's Order signed by the Marches. Since the Supreme Court has suggested that an arbitration agreement requiring a party to litigate a claim in a forum whose cost prevents the party "from effectively vindicating [his or her] federal statutory rights," Randolph, 531 U.S. at 90, Rule 44(G) – in principle, at least – protects the Marches.[8] The Court recognizes that, in practice, arbitrants are not always afforded all of the rights that the law provides them. But, the facts available to the Court at this time do not provide a basis for concluding that the Marches likely will be forced to shoulder costs that they cannot bear. And, speculation about the way that the NAF might handle the Marches' complaint does not justify ruling that the Marches' arbitration agreement is unconscionable.[9]

---

[7] The NAF Rules define a "Claimant" as "[a]ny individual or Entity making any Claim under this Code," and a "Claim" as "[a]ny Claim submitted by any Party including an Initial Claim, Cross-Claim, Counter Claim, and Third Party Claim."

[8] Another circuit has held that arbitration is not a "reasonable substitute for a judicial forum" if a party must pay any fee to vindicate a right provided by federal law. See Cole v. Burns Int'l Sec. Servs., 105 F.3d 1465, 1484 (D.C. Cir. 1997). Although this Court is not bound by that decision, Cole involved an arbitral forum that did not have any procedures for waiving, reducing, or shifting its fees for indigent arbitrants, distinguishing that case from the matter before the Court.

[9] Another court in the Fourth Circuit has refused to enforce an arbitration agreement that required a party whose finances were "strained" to pay fees lower than those imposed by the NAF. See Camacho v. Holiday Homes, Inc., 167 F. Supp. 2d 892, 897 (2001). The cost of arbitration in Camacho was $2000, which the plaintiff could recover if she prevailed, plus one half of the arbitrator's fees, a sum likely to be between $600 and $4100. Id. at 897. But, that court explicitly declined to find that the arbitration agreement was unconscionable, stating its belief that the Fourth Circuit "has repeatedly indicated that the

Second, the Marches argue that their arbitration agreement is unconscionable because it prevents them from bringing a class complaint. They allege that the NAF, unlike other arbitration organizations, has not established any procedures for handing class claims. They also argue that Rule 19 of the NAF Code of Procedure bars class claims because it states that "[a]n Arbitrator has no authority to issue an Order or Award binding any individual or Entity [that is] not a Party, unless that individual or Entity agrees or as required by applicable law." See Pl.'s Mem. Resp. to Def.'s Mot. to Dismiss, Ex. 3, at 16.

But, the Court is not persuaded by the Marches' reading of the NAF Code of Procedure. Rule 19 implies that an arbitrator's decision <u>may</u> bind a person that is not a party to a proceeding before the NAF – if the person agrees or "applicable law" requires it. Rule 19 also refers to proceedings "involving multiple ... Parties" and to decisions "joining, consolidating[,] or aggregating parties," <u>id.</u>, suggesting that the NAF has established procedures for handling class claims. But, even if the NAF does not (or refuses to) conduct class actions, the Marches' arbitration agreement would not be unconscionable for that reason. <u>See, e.g.</u>, <u>Adkins</u>, 303 F.3d at 502–03. In <u>Adkins</u>, the Fourth Circuit ruled that an arbitration agreement that expressly prohibited a party from bringing a class claim was not unconscionable. <u>Id.</u> The Marches' arbitration agreement does not address class arbitration explicitly, but <u>Adkins</u> implies that a contract may implicitly prevent a party from arbitrating on behalf of a class. And, as the <u>Adkins</u> court observed, a party may bargain away a

---

circumstances in which a court may find an arbitration agreement unconscionable are limited, and that arbitrators should generally decide whether arbitration procedures are fair." <u>Id.</u> at 896 n.2 (citing <u>Hooters</u>, 173 F.3d at 940; <u>Sydnor</u>, 246 F.3d 668 [sic]).

judicial remedy.  Id. at 503.  The Fourth Circuit has also ruled that arbitration may proceed in a forum that does not replicate every aspect of a court, Hooters, 173 F.3d at 940, further supporting the Court's conclusion that the Marches are not entitled to bring a class claim. Finally, to the extent that the Marches' argument rests on an interpretation of their arbitration agreement, their claim must be evaluated by an arbitrator, not the Court.  See Green Tree Fin. Corp. v. Bazzle, 539 U.S. 444, 451–52 (2003) (concluding that a dispute over whether an arbitration agreement permitted class arbitration must be decided in arbitration).

      Thus, neither of the Marches' arguments for invalidating their arbitration agreement succeed.  Nor has the Court identified any other grounds for doing so.  While the Fourth Circuit has refused to enforce agreements that gave one party the ability (or the effective ability) to select an arbitrator, see Murray v. United Food and Commercial Workers Int'l Union, 289 F.3d 297, 302–03 (4th Cir. 2002); Hooters, 173 F.3d at 938–39, the Fourth Circuit has never invalidated an arbitration agreement because one party selected the arbitral forum.  So, the fact that Tysinger picked the NAF – an organization that, according to the Marches, favors creditors – does not invalidate the parties' arbitration agreement. Nor is that agreement unconscionable because of the disparity in the parties' bargaining power.  Congress is currently discussing a bill, the Arbitration Fairness Act of 2007, that would amend section 2 of the Federal Arbitration Act to invalidate any agreement requiring the arbitration of a "consumer" dispute or one "between parties of unequal bargaining power" that was formed before the dispute arose.  See S. 1782, 110th Cong., 1st Sess.

(July 12, 2007); H.R. 3010, 110th Cong., 1st Sess. (July 12, 2007). But, the law currently does not provide a basis for a court to invalidate an arbitration agreement because it was formed by "parties of greatly disparate economic power." See id. § 2(2). Finally, the Supreme Court has rejected "generalized attacks on arbitration" based on suspicion about arbitrators' fidelity to the law. Randolph, 531 U.S. at 89–90.

3.

If the Marches' allegations are true, Tysinger's conduct – described charitably – was misleading, and the Court does not condone the practice of rescinding a sale, one that a consumer might reasonably regard as having been completed, on the basis of language that many people can understand, if at all, only with difficulty. But, on the basis of the information available at this time, the Court cannot grant the Marches the relief that they seek. They must pursue their claims before the NAF.

It shall be SO ORDERED.

/s/
James R. Spencer
Chief United States District Judge

ENTERED this    12th    day of December 2007

14